IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MICHAEL A. KERSHAW                                                              PLAINTIFF

        v.                         Civil No. 2:08-CV-02147-JRM

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                  DEFENDANT

**MEMORANDUM OPINION**

**I.     Factual and Procedural Background**

Plaintiff, Michael A. Kershaw, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d), and § 1602 of Title XVI, 42 U.S.C. § 1381a, respectively (collectively, "the Act").

At the time of the alleged onset date, Plaintiff was thirty three years of age and possessed a high school diploma. (Tr. 122, 145). He has no past relevant work. (Tr. 63). In Plaintiff's applications for DIB and SSI, he alleged a disability onset date of January 1, 2004, due to depression, schizo-affective disorder with psychotic features, personality disorder with mixed features of passive-aggressive, obsessive-compulsive as well as explosive personality elements, chronic low back pain, panic attacks/anxiety, and attention deficit disorder ("ADD"). (Tr. 14, 57,116).

Plaintiff protectively filed his DIB and SSI applications on January 20, 2006. (Tr. 92-99, 112). His applications were denied at the initial and reconsideration levels. (Tr. 65-75). At Plaintiff's request, an administrative hearing was held on April 8, 2008. (Tr. 11-46). Plaintiff was

present at this hearing and represented by counsel. The Administrative Law Judge ("ALJ") rendered an unfavorable decision on July 24, 2008, finding that Plaintiff was not disabled within the meaning of the Act because he was capable of performing one or more occupations existing in significant numbers in the national economy. (Tr. 51-64). Subsequently, the Appeals Council denied Plaintiff's Request for Review on October 24, 2008, thus making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of that decision.

## II.   Medical History

### A.   Western Arkansas Counseling and Guidance Center

On July 22, 1999, Plaintiff began treatment with Dr. Norman Pointer. (Tr. 160). Dr. Pointer noted in Plaintiff's initial interview that "he was restless, paranoid, and experiencing at least some auditory misperceptions, if not auditory hallucinations. He seemed to be experiencing some pressure of thought and probably also some dissociation." (Tr. 160). Dr. Pointer found that Plaintiff suffered from probable paranoid schizophrenia with a global assessment of functioning ("GAF") score of 48. (Tr. 160). On August 4, 1999, Dr. Pointer noted that Plaintiff was "less paranoid, but he's still quite irritable and feels that the control he has is relatively tenuous. . . given the improvement he's made, I'm going to clear him to go back to work." (Tr. 158). At that time, Dr. Pointer prescribed Plaintiff Zyprexa and Depakote, and diagnosed him with probable bipolar disorder with a current GAF of 62. (Tr. 158).

On August 18, 1999, Plaintiff left work because he became irritable and was afraid of losing control. (Tr. 157). After seeing Plaintiff, Dr. Pointer opined that he continues to be paranoid, but "does seem to be more in control of his mood than he was recently." (Tr. 157). Given Plaintiff's condition, however, Dr. Pointer found that he was still unable to work. (Tr. 157). He increased

Plaintiff's dosage of Zyprexa and gave him a current GAF of 60.  (Tr. 157).  On August 25, 1999, Dr. Pointer noted that Plaintiff "was much more stable today, although he says that he's continuing to have some problems with rage.  He hasn't been taking the Depakote at the dose that I thought he was taking . . . so I've asked him to resume that dose."  (Tr. 156).  At this time, Dr. Pointer gave Plaintiff a GAF of 68.  (Tr. 156).

      B.  <u>Psychology Services of Fort Smith</u>

On February 19, 2002, Plaintiff underwent psychological testing in connection with a prior DIB application.  (Tr. 161).  Dr. Douglas A. Brown observed that Plaintiff "doesn't handle stress well and needs help from medication.  He isn't taking meds [sic], so he is 'raging more than usual.'"  (Tr. 161).

Plaintiff admitted to Dr. Brown that he had taken special education classes in school due to difficulty concentrating and staying on task.  (Tr. 22, 161).  Plaintiff complained of pains in his left chest and arm, numbness in his fingers, and several head injuries, although Dr. Brown found no evidence of cerebrovascular accident.  (Tr. 161).  Although Plaintiff admitted only to the occasional use of marijuana, Dr. Brown suspected more drug use.  (Tr. 161).  Upon observation of Plaintiff, Dr. Brown noted that his speech was "very spontaneous," circumstantial, and almost pressured.  (Tr. 161).  "He has auditory and visual hallucinations.  There is a person who talks to him inside his head and comes out and takes over.  This is a 'gladiator from Rome . . . named Titan.'  He also has grandiose, paranoid-type delusions."  (Tr. 162).  Dr. Brown's notes revealed that Plaintiff tends toward the explosive side and has attempted suicide several times by hanging, but he denied any homicidal thoughts or attempts. (Tr. 162).  Despite Plaintiff's mental impairments, Dr. Brown noted that he is able to bathe, dress, and feed himself and cooperates with medical advice.  (Tr. 163).

Based on his impressions of Plaintiff, Dr. Brown estimated his IQ at 80 or greater. (Tr. 162). In Axis I, Dr. Brown diagnosed Plaintiff with schizophrenia, paranoid type, by history; probable intermittent explosive disorder, and probable poly-substance abuse in remission or partial remission. (Tr. 162). In Axis II, Dr. Brown diagnosed Plaintiff with personality disorder, NOS, with mixed features, including passive-aggressive, obsessive-compulsive, schizoidal and avoidant elements. (Tr. 162). Dr. Brown noted no evidence of exaggeration or malingering. (Tr. 163). His prognosis for significant improvement over the next year was poor. (Tr. 162). Specifically, Dr. Brown found that Plaintiff's ability to understand, carry out and remember instructions was impeded greatly by his racing thoughts and pressured ideations, as well as the paranoid ideations. (Tr. 163). "This will also tremendously influence his response to supervision and co-workers in an extremely negative way. I think the work pressures in the work setting are going to be more than this young man can handle." (Tr. 163).

  C. <u>Sparks Regional Medical Center</u>

On December 12, 2001, Plaintiff went to the emergency room with complaints of pain, swelling, and redness in his left eye. (Tr. 170-71). He was diagnosed with a chalizion of his left eye, and was referred to an ophthalmologist for follow-up. (Tr. 170-74).

Plaintiff visited the emergency room again on June 2, 2003, complaining of chest pain and stress. (Tr. 164). Plaintiff was frustrated, agitated, and experiencing hallucinations. (Tr. 165). The attending physician noted that Plaintiff suffered from "some sort of Schizo-affective disorder" and borderline schizophrenia, and was supposed to be on medication. (Tr. 164-67). An EKG yielded normal results, and Plaintiff was discharged with a prescription for Ativan. (Tr. 168).

D. St. Edward Mercy Medical Center

On October 21, 2003, Plaintiff was admitted to the emergency room. (Tr. 175). "[H]e hears voices, sees things, no real delusional mechanisms. Not suicidal or homicidal." (Tr. 175). Plaintiff's voice was a little pressured, and he had not been taking his medication due to the cost. (Tr. 175). The attending physician diagnosed Plaintiff with psychosis, chronic, exacerbated due to noncompliance. (Tr. 175). He found that Plaintiff was not a threat to himself or others. (Tr. 175). He discharged Plaintiff with a referral to Western Arkansas Counseling and Guidance Center. (Tr. 175).

On April 8, 2005, Plaintiff was seen again in the emergency room with complaints of an "anger outburst." (Tr. 176). He left work because "it just got to be under too much pressure and [he] felt like he was on the edge of exploding again, one of his rage problems." (Tr. 176). Plaintiff was noted to have a history of schizophrenia with emotional swings in the past, "but has been somewhat functional." (Tr. 176). "He still works in the workplace, has his own car, but has had numerous jobs . . . He was trying to see about getting an appointment at Western Arkansas Counseling and Guidance Center." (Tr. 176). At the time, Plaintiff had been off medication for two months due to his finances. (Tr. 176). He was discharged with a prescription for Ativan and a recommendation to Western Arkansas Counseling and Guidance Center. (Tr. 176).

E. DDS Evaluations

Plaintiff failed to appear for a scheduled consultative mental examination in 2006 because he was in jail for failure to pay child support. (Tr. 124, 185). Additionally, on October 15, 2007, Plaintiff did not keep his appointment for a consultative psychological examination. (Tr. 143).

**III.    Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then

shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

IV.   **Discussion**

The ALJ found that: (1) Plaintiff meets the insured status requirements of the Act through June 30, 2010; (2) Plaintiff did not engage in substantial gainful activity from January 1, 2004, the alleged onset date, through March 31, 2007; (3) Plaintiff has the following severe impairments: schizo-affective disorder with psychotic features and personality disorder with mixed features of passive-aggressive, obsessive-compulsive as well as explosive personality elements; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (5) Plaintiff has the RFC to perform a full range of work at all exertional levels; however he has demonstrated non-exertional limitations of moderately restricted ability to understand/remember/carry out instructions, respond appropriately to usual work situations as well as routine work changes and interact appropriately with co-workers, the public and supervisors; (6) Plaintiff has no past relevant work; (7) Plaintiff was born on August 20, 1970 and was 33 years old, which is defined as a younger individual 18-49, on the alleged disability onset date; (8) Plaintiff has at least a high school education and is able to communicate in English; (9) Transferability of job skills is not an issue because Plaintiff has no past relevant work; (10) Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; and therefore, (11) Plaintiff

has not been under a disability, as defined in the Act, from January 1, 2004 through July 24, 2008, the date of the ALJ's decision. (Tr. 56-64).

Plaintiff contends that the ALJ erred by: (1) failing to consider all of Plaintiff's impairments in combination; (2) failing to give proper weight to the Plaintiff's subjective complaints; (3) finding that Plaintiff retains the RFC to perform all levels of work; (3) disregarding the opinions and findings of Plaintiff's primary treating physicians; and (4) failing to fully and fairly develop the record. *See* Pl.'s Br. 15-22.

### A. Plaintiff's Combined Impairments

Plaintiff first argues that the ALJ failed to properly consider all of Plaintiff's impairments, both singly and in combination. *See* Pl.'s Br. 16-17. Specifically, Plaintiff asserts that the ALJ failed to consider Plaintiff's diagnoses of chronic psychosis, bipolar disorder, and intermittent explosive disorder. *See* Pl.'s Br. 16.

In determining whether an individual's physical or mental impairments render him disabled, the ALJ shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be deemed severe. 42 U.S.C. 423(d)(2)(B). At step two, the ALJ found that Plaintiff suffers from the following severe impairments: schizo-affective disorder[1] with psychotic features and personality disorder with mixed features of passive-aggressive, obsessive-compulsive as well as explosive personality elements. (Tr.

---

[1] Schizo-affective disorder was first recognized in the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th ed. (DSM-IV), as a distinct diagnosis. It is characterized by elements of both schizophrenia and bipolar disorder. The DSM-IV classifies schizo-affective disorder as "an uninterrupted period of illness during which there is either a major depressive episode, a manic episode or a mixed episode" that appears concurrent with symptoms that meet Criterion A for Schizophrenia (two (or more) of the following for at least one month): delusions, hallucinations, disorganized speech, grossly disorganized or catatonic behavior, negative symptoms, i.e., flat affect, muteness, lack of volition.

57). In making this determination, the ALJ concluded that Plaintiff's alleged physical impairments, including back pain, chest/arm pain, finger numbness, and multiple head injuries were not substantiated by the medical evidence of record. (Tr. 57).

At step three of the sequential evaluation, the ALJ found that Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.03 (schizophrenic, paranoid, or other psychotic disorders) or 12.08 (personality disorders). (Tr. 57). The ALJ specifically noted that Plaintiff's impairments failed to meet the "Paragraph B" criteria under both listings, as Plaintiff's mental impairments produced only mild restrictions in activities of daily living, moderate restrictions in social functioning and concentration, persistence, or pace, and has resulted in no episodes of decompensation. (Tr. 57-58).

The court finds no merit in Plaintiff's argument that the ALJ failed to consider all of Plaintiff's impairments in combination. The ALJ thoroughly discussed Plaintiff's medical history and specifically stated that he considered Plaintiff's mental impairments both "singly and in combination." *See Harris v. Apfel*, 198 F.3d 250 (8th Cir. 1999) (citing *Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) ("claimant's conclusory statement that ALJ failed to consider combined effects of impairments was unfounded where ALJ noted each impairment and concluded that impairments alone or in combination were not of listing level")). Furthermore, the ALJ's determination of Plaintiff's severe impairments directly took into account Plaintiff's psychotic, manic depressive, and explosive tendencies. Accordingly, substantial evidence supports the ALJ's determination regarding Plaintiff's severe impairments.

  B. <u>Plaintiff's Subjective Complaints</u>

Plaintiff also contends that the ALJ erred in disregarding his subjective complaints. (Tr. 60).

When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is "not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations." *Id.* However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.*

In considering Plaintiff's subjective complaints, the ALJ determined that Plaintiff's medically determinable impairments could reasonably produce the alleged symptoms, but his statements regarding the intensity, persistence and limiting effects of his symptoms were not entirely credible. (Tr. 60-61). Specifically, the ALJ stated:

> The undersigned Administrative Law Judge has carefully considered the claimant's statements concerning his impairments and their impact on the ability to work and finds the allegations are considerably more limited and restricted than is established by the medical evidence. This is not to say that the claimant was symptom free or did not experience difficulty performing some tasks. However, the objective evidence does not demonstrate the existence of limitations of such severity as to have precluded the claimant from performing all work on a regular and continuing basis at any time from the alleged onset date of disability.

(Tr. 62).

In reaching this conclusion, the ALJ noted that Plaintiff's symptoms were largely controlled and/or minimized with the use of medication. (Tr. 60-61). Additionally, the ALJ noted that although Plaintiff claimed to have severe psychiatric problems, he failed to take his medication as prescribed, obtain prolonged treatment, and attend two scheduled consultative appointments.[2] (Tr.

---

[2] The court is cognizant of the Eighth Circuit's holding in *Pate-Fires v. Astrue*, 564 F.3d 935, 946 (8th Cir. 2009) (ALJ must take into account whether a mentally ill claimant's failure to comply with prescribed medication results from the mental illness itself). Unlike the situation in *Pate-Fires*, however, the facts here demonstrate that

62). Furthermore, although Plaintiff testified that he was unable to work due to angry outbursts, irritability, hallucinations, anxiety, and lack of concentration, his girlfriend later confirmed that Plaintiff performed substantial gainful activity in 2007 waxing and polishing floors at three different schools. (Tr. 20-25, 20, 41-45, 61-62). For these reasons, the ALJ found that Plaintiff's testimony concerning his subjective complaints was not entirely credible. The court finds that substantial evidence supports this determination.

C. Plaintiff's RFC

Plaintiff asserts that the ALJ erred in determining that he retained the residual functional capacity to perform work at all levels. *See* Pl.'s Br. 18. At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir

---

Plaintiff was fully aware of his need to take medication, but failed to do so because of cost concerns (Tr. 161, 175, 176). Plaintiff stated that he attempted to obtain treatment at Western Arkansas Counseling and Guidance Center, but could not tender payment at the time of services. (Tr. 32-33). He failed to provide any evidence of the refusal of services. Furthermore, DDS requested Plaintiff's records from 2000 through 2006, and there was no indication that Plaintiff had even attempted to obtain treatment at Western Arkansas Counseling and Guidance Center during the relevant time period. (Tr. 181). Finally, on October 15, 2007, Plaintiff failed to appear for a mental consultative examination performed at the cost of the Social Security Administration. (Tr. 143). Such an evaluation would have provided support for his disability claim, yet he chose not to attend and offered no explanation for his absence.

2000).

>With respect to Plaintiff's RFC, the ALJ found the following:
>
>[T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels; however he has demonstrated non-exertional limitations of moderately restricted ability to understand/remember/carry out instructions, respond appropriately to usual work situations as well as routine work changes and interact appropriately with co-workers, the public and supervisors.  Further, an individual with moderately limited functional abilities has more than slight limitations, but can still perform in a satisfactory manner.

(Tr. 58-59).  Despite Plaintiff's contention, the ALJ found that "the claimant's ability to perform work at all exertional levels has been compromised by his non-exertional limitations." (Tr. 63).  To assist him in determining Plaintiff's RFC, the ALJ directed interrogatories to a vocational expert, who indicated that a hypothetical person of the claimant's age, education, work experience, and RFC could perform the following occupations under the Dictionary of Occupational Titles ("DOT"): light unskilled Assemblers (Toy Assembler DOT #731687-034, Cutlery/Hardware Assembler DOT #701687-010, and Fishing Floats Assembler DOT #732687-014), of which there are 7,487 jobs locally and 417,558 jobs nationally, light unskilled Machine Tenders/Off bearers (Compression/Molding Machine Tender DOT #556685-022, Riveting Machine Operator DOT #699685-030, and Bindery Machine Feeder/Off bearer DOT #653686-026), of which there are 3,497 jobs locally and 321,000 jobs nationally, and light unskilled Counter Clerks (Photofinishing Counter Clerk DOT# 249366-010, Furniture Rental Clerk DOT# 295357-018, and Storage Facility Rental Clerk DOT #295367-026), of which there are 677 jobs locally and 57,867 jobs nationally.  (Tr. 149-51).

The court finds that substantial evidence supports the ALJ's determination regarding Plaintiff's RFC.  As Plaintiff readily admits, he has a "rather sparse" medical history.  *See* Pl.'s Br.

7. In fact, there is only one medical record from the relevant time period. (Tr. 176). On April 8, 2005, Plaintiff went to the emergency room complaining of an "anger outburst." (Tr. 176). The attending physician noted a history of schizophrenia with emotional swings, but added that Plaintiff "has been somewhat functional" and "still works in the workplace, has his own car, but has had numerous jobs." (Tr. 176). He was released that day with a prescription for Ativan. (Tr. 176). This is the only evidence provided regarding Plaintiff's impairments between January 1, 2004, the alleged onset date, and March 31, 2007, when Plaintiff began performing substantial gainful activity.

Furthermore, the Social Security Administration scheduled two consultative exams to provide more thorough evidence of Plaintiff's impairments during the relevant time period, which Plaintiff failed to attend. (Tr. 124, 143, 185). *See* 20 C.F.R. §§ 404.1518 and 416.918 (if you fail to appear at a consultative examination without good reason, we may find that you are not disabled). Finally, Plaintiff's work activity during the relevant time period, although not substantial gainful activity, supports the conclusion that Plaintiff was not disabled at any point between January 1, 2004 and March 31, 2007. (Tr. 57). *See* 20 C.F.R. §§ 404.1571 and 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). For these reasons, Plaintiff failed to demonstrate that he did not have the RFC to perform substantial gainful activity. *See* Goff v. Barnhart 421 F.3d 785, 790 (8th Cir. 2005) ("[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant").

    D. <u>Treating Physician's Opinion</u>

Plaintiff asserts that the ALJ improperly dismissed the opinions of Plaintiff's treating physician, Dr. Brown. *See* Pl.'s Br. 20-21. A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence" in a clamant's record. *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2).  The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling.  *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).  A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."  *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013). In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion.  20 C.F.R. § 404.1527(d)(2).

> Regarding the opinions of Plaintiff's treating physicians, the ALJ stated:
>
> While the medical record supports the claimant's statements that his mental illnesses involving schizoaffective and personality disorders have been significant at one time or another, the treating sources' overall medical records, including the most recent April 2005 treatment record indicated that with adequate pharmacological intervention, the claimant's conditions were controlled and/or minimized.  In his review of the entire medical record, the undersigned could not concur that the claimant's mental impairments would warrant such a significantly reduced functional assessment as noted in the examining physician's one time June 2002 visit [Dr. Brown].
>
> Therefore, based on the overall documented evidence of record which includes concurrent treating sources' statements as well as clinical findings including inconsistencies within Dr. Brown's own treatment records, the undersigned is giving minimal weight to the treating physician's opinions in the June 2002 report that are not support by the clinical findings.

(Tr. 61).

Plaintiff's reliance on the "treating physician" rule is misplaced.  Dr. Brown performed a consultative mental examination in connection with a prior disability application.  *See* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); *Kirby v. Astrue,* 500 F.3d 705, 709 (8th Cir.2007)

(consulting physician's opinion deserves no special weight); *Charles v. Barnhart,* 375 F.3d 777, 783 (8th Cir.2004) (generally, when consulting physician examines claimant only once, his opinion is not considered substantial evidence). As such, he is not a "treating physician" entitled to any special deference. Furthermore, Dr. Brown examined Plaintiff in 2002, almost a full two years prior to Plaintiff's alleged onset date.

Contrary to Plaintiff's assertion, the medical evidence of record suggests that with proper medication, Plaintiff's symptoms greatly improved. (Tr. 156-60, 175-76). Dr. Norman Pointer's progress notes indicate that when Plaintiff was consistently taking Depakote and Zyprexa, his GAF score increased from a 48 to a 68 over the course of one month. (Tr. 156-60). Although Dr. Pointer treated Plaintiff five years prior to the alleged onset date, his records are the only records provided from a treating physician. Furthermore, they are consistent with subsequent emergency room reports, which indicate that Plaintiff's symptoms were exacerbated due to non-compliance. (Tr. 167, 175-76). Finally, although Plaintiff stated on many occasions that he could not afford treatment, he has failed to provide any evidence of refusal of services from Western Arkansas Counseling and Guidance Center, an organization that provides treatment for those without adequate means. For these reasons, we find that the ALJ's decision to give little weight to the opinion of Dr. Brown is supported by substantial evidence.

E. Duty to Fully and Fairly Develop the Record

Plaintiff's final argument is that the ALJ failed to fully and fairly develop the record. *See* Pl.'s Br. 21-22. Specifically, Plaintiff argues that the ALJ had a duty to order a Psychiatric Review Technique or a Mental RFC Assessment. *Id.*

The ALJ has a duty to fully and fairly develop the record, even if a claimant is

represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician. *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000) (holding that it was improper for an ALJ to rely on the opinions of reviewing physicians alone). While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis. *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

Under the circumstances of this case, the court finds that the ALJ fulfilled his duty to fully and fairly develop the record. Plaintiff was given ample opportunity to submit medical evidence, and counsel for Plaintiff indicated at the hearing that she was satisfied with the evidence provided. (Tr. 17-18, 145). Additionally, Plaintiff failed to attend two scheduled psychological examinations. Although Plaintiff contends he was in jail during the first scheduled examination, he failed to provide a "good reason" for his failure to attend the second appointment. The Social Security regulations clearly state, "[i]f you are applying for benefits and do not have a good reason for failing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind." 20 C.F.R. § 416.918; *see also Walker v. Barnhart*, 172 Fed.

Appx. 423, 427, (3rd Cir. 2006) (claimant's repeated failure to cooperate with the Commissioner's attempts to obtain a consultative examination gave no reason for the ALJ to believe he would be more cooperative in the future). For these reasons, the court finds that the ALJ satisfied his duty to fully develop the record.

**V.      Conclusion**

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's denial of benefits, and thus the decision should be affirmed. Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

ENTERED this 9th day of February 2010.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE